UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


A&T SIDING, INC., an Oregon corporation,                    Case No.: 3:10-CV-980-AC

                                    Plaintiff,                    OPINION AND ORDER

            v.

CAPITOL SPECIALTY INSURANCE
CORPORATION,

                                    Defendant.
_____

ACOSTA, Magistrate Judge:

*Opinion*

        This action is an attempt by A&T Siding, Inc. ("A&T"), to recover amounts it claims are due

under a commercial general liability insurance policy (the "Policy") issued by Capitol Specialty

Insurance Corporation ("Capitol") for the benefit of the Brownstone Homes Condominiums

Association (the "Association").  Currently before the court are Capitol's motion for summary

judgment, and A&T's motion for partial summary judgment and motion to amend the complaint.

For the reasons set forth below, Capitol's motion for summary judgment is denied with regard to

A&T's claim for defense costs and punitive damages based on Capitol's allegedly wrongful refusal

to defend A&T, and granted with regard to A&T's indemnification claims.  A&T's motion for partial

summary judgment is granted with regard to Capitol's affirmative defenses of another action

pending, lack of standing, and lack of real party in interest.  A&T's motion to amend is granted.

*Background*

The facts relevant to the pending motion for summary judgment are not in dispute.  The

effect of the prior proceeding, the settlement agreement, and the subsequently executed addendum

to the settlement agreement are.

Brownstone Homes, LLC ("Brownstone"), acted as developer and general contractor of the

Brownstone Forest Heights Condominiums located in Portland, Oregon (the "Project") .  (Hickman

Decl. Ex. 1 at 1.)  After discovering various defects, including water penetration through the building

envelope, the Association filed an action against Brownstone alleging construction defects in the

Project (the "First Action").  (Hickman Decl. Ex. 1 at 1; Compl. ¶ 3.)  Brownstone filed third-party

claims against a number of its subcontractors, including a claim against A&T for the provision and

installation of defective siding.  (Hickman Decl. Ex. 1 at 1.)  The Association eventually amended

its complaint to assert claims directly against A&T alleging negligence in the installation of

weatherproofing membranes, flashing, and siding.  (Compl. ¶ 4.)  A&T tendered defense of the First

Action to its insurers, Capitol and Zurich Insurance ("Zurich").  Capitol participated in the defense

of the First Action for slightly more than a month but then, by letter dated September 24, 2007,

advised A&T that it was withdrawing from the defense of the action based on its determination that

the alleged negligence and resulting defects occurred prior to the inception of the Policy.  (Compl. ¶ 5; Bennett Aff. Ex. 1.)

The Association and A&T agreed to settle their claims and entered into a Settlement Agreement in March 2008 (the "Agreement").  (Hickman Decl. Ex. 1.)  While A&T denied any and all liability related to the Project, it agreed to the entry of a two million dollar judgment against it in favor of the Association, which was entered on November 13, 2008 (the "Judgment"), in exchange for a "full, final and complete settlement, adjustment and compromise of any and all Claims based upon the allegations contained in the Lawsuit" between the Association, A&T, and Zurich. (Hickman Decl. Ex. 1 at 1-3.)  However, the Association agreed that in no event would it "execute upon or permit the execution of the stipulated judgment against A&T or its assets"  or those of any insurer that contributed to the Judgment.  (Hickman Decl. Ex. 1 at 3.)

The Agreement provided for payment of the Judgment by A&T's insurers.  Zurich agreed to, and did, pay $900,000 of the Judgment.  The Association and Zurich contemplated that the remaining $1.1 million would be paid by Capitol but Capitol refused to contribute to the Judgment in any way.   (Hickman Decl. Ex. 1 at 2)

In contemplation of Capitol's refusal to contribute, the Agreement provided that it was "not intended as a release of any claims by or between the Association and Capitol as A&T's insurance carrier." (Hickman Decl. Ex. 1 at 2.)  In fact, A&T assigned to the Association  "any and all claims arising out of or related to [Capitol's] policies and claims practices relating to the defense, investigation and failure to settle the Lawsuit or contribute to settlement of the Lawsuit, and shall include, without limitation, claims for breach of contract, torts, bad faith, negligence, breach of fiduciary duties, and breach of the Oregon Consumer Protection Act" and that the Association "shall

be entitled to seek recovery of the unexecuted portion of this judgment against Capitol." (Hickman Decl. Ex. 1 at 3.)  A&T agreed to cooperate with the Association "in pursuing the rights and claims assigned pursuant to [the] Agreement," specifically with "respect to the production and execution of any documents and in the performance of any acts, including the giving of testimony." (Hickman Decl. Ex. 1 at 3.)

Pursuant to the Agreement, and in light of Capitol's refusal to contribute to the Judgment, the Association filed a garnishment proceeding against Capitol in the First Action. (Hickman Decl. Ex. 3.)  The Association alleged that Capitol breached its duty to defend and indemnify A&T in the First Action and, accordingly, was liable for the unsatisfied portion of the Judgement. (Hickman Decl. Ex. 3 at 3-4.)

Capitol moved for summary judgment, arguing that because the Policy provides coverage only for those sums that A&T is legally obligated to pay and the Association completely absolved A&T of any responsibility for the Judgment in the Agreement, A&T is not legally obligated to pay any part of the Judgment and the Policy does not provide coverage. (Hickman Decl. Ex. 4 at 2.) Capitol relied on *Stubblefield v. St. Paul Fire and Marine Ins. Co.*, 267 Or. 397 (1973); *Far West Federal Bank, S.B. v. Transamerica Title Ins.*, 99 Or. App. 340 (1989); and *Oregon Mutual Ins. Co. v. Gibson*, 88 Or. App. 574 (1987), in which the Oregon courts held that "if an insured settles a claim by stipulating to a judgment in return for an unconditional covenant not to execute, then no coverage is available because the insured effectively obtained a release from liability." (Hickman Decl. Ex. 4 at 4.)  In response, the Association argued that *Stubblefield*, and its progeny, were legislatively overruled by OR. REV. STAT. 31.825 in 1989, as recognized by this court in *Walthers v. Travelers Cas. & Sur. Co.*, CV No. 98-805-ST, 1999 WL 793939 (D. Or. Aug. 4, 1999), and that, in any event,

*Stubblefield* is distinguishable.  (Hickman Decl. Ex. 5.)  Capitol replied that OR. REV. STAT. 31.825 applies only to claims assigned after entry of judgment and was intended to overrule *Oregon Mutual*, not *Stubblefield*.  Capitol additionally argued that the covenant not to sue is not made conditional by the possibility that the Construction Contractors' Board could refuse to reinstate A&T's contractor license in the event of nonpayment based on the plain language of the covenant that "in no event" would the Association attempt to recover the Judgment from A&T or its assets.  (Hickman Decl. Ex. 6.)

In a letter opinion issued on April 15, 2010, Peter R. Chamberlain, the Pro Tem Circuit Court Judge who heard the summary judgment arguments, rejected the Association's arguments that OR. REV. STAT. 31.825 overruled *Stubblefield*, and held that the *Stubblefield* line of cases was fatal to the Association's claims against Capitol.  The court recognized that the *Stubblefield* cases "clearly stand for the proposition that an insured who settles with a tort victim by stipulation to a judgment in return for an unconditional covenant not to execute on any asset other than potentially available insurance coverage relieves the *insurer* of liability under the policy because the *insured* has been released from liability", and that such rule prevented Association from forcing Capitol to contribute to the Judgment.  (Hickman Decl. Ex. 8 at 2-3.)  The Association appealed this ruling to the Oregon Court of Appeals, which appeal is still pending.

Not addressed in the letter opinion was Capitol's second motion for summary judgment for dismissal of the Association's claim based on Capitol's refusal to participate in A&T's defense.  (Hickman Decl. Ex. 7.)  Capitol moved for summary judgment on the duty to defend claim based on the absence of allegations that A&T incurred defense costs.  (Hickman Decl. Ex. 7 at 42-43.)  In its amended garnishment allegations, the Association asserted that "Capitol had a duty to defend

A&T" and that "Capitol's refusal to defend A&T was wrongful." (Hickman Decl. Ex. 3 at 4.) The Association alleged that, as a result of this wrongful refusal to defend, "Capitol is liable for the unsatisfied portion of the judgment against A&T." (Hickman Decl. Ex. 7 at 4.) The parties argued this motion at the hearing before Judge Chamberlain.

At oral argument, Capitol asserted that because the Association was attempting to collect on the Judgment, which was based solely on damage to the Property and did not include any defense costs, the Association was limited to a claim for indemnification. (Hickman Decl. Ex. 7 at 43.) Capitol additionally argued that any attempt by the Association to prove the merit of its indemnification claim by proving that Capitol breached its duty to defend A&T would be unsuccessful in light of the holding by the Oregon Court of Appeals in *Northwest Pump & Equip. Co. v. American States Ins. Co.*, 141 Or. App. 210 (1996), that a determination that an insurer had breached its duty to defend did not automatically create an obligation on the part of the insurer to indemnify the insured for the underlying loss as well. (Hickman Decl. Ex. 7 at 43.) In other words, an indemnity obligation does not arise solely from a breach of the duty to defend. (Hickman Decl. Ex. 7 at 43.) In response, the Association acknowledged that it included the duty to defend claim out of an abundance of caution and with the hope that it could convince the appellate court that the dissent, rather than the majority opinion, in *Northwest Pump* is the correct holding. (Hickman Decl. Ex. 7 at 46.) The Association represented that it did not expect the court to agree with its argument, that the dismissal of the duty to defend claim would not "gut" the case, that a garnishment proceeding was the simplest way to get the coverage issue decided, and that if the court dismissed the case, it was confident that it had preserved the right to file a law suit as the assignee of A&T's rights against the insurer. (Hickman Decl. Ex. 7 at 47-48). Because the court found in favor of

Capitol on the indemnification issue, it expressly stated that it did not need to reach or address the duty to defend claim.  (Hickman Decl. Ex. 8 at 3.)

In response to Judge Chamberlain's granting Capitol's motion for summary judgment, which in effect sustained Capitol's objections to the garnishment, and in an attempt to revive Capitol's liability for A&T's liability under the terms of the Policy and "more clearly express the intent" of the Association and A&T in entering the Agreement, the parties amended the terms of the Agreement on May 27, 2010, to provide for a full release of only Zurich, an obligation on behalf of A&T to pursue litigation against Capitol for the benefit of the Association, and a promise from the Association not to execute on the Judgment against A&T or its assets until after the completion of the action against Capitol or to pursue collection of any unsatisfied portion of the Judgment from A&T's shareholders, directors, officers, agents or employees, or from their family members (the "Addendum").  (Hickman Decl. Ex. 9.) The section in which A&T expressly assigned its claims against Capitol to the Association was amended to read as follows:

7.    ACTION AGAINST CAPITOL

7.1  A&T agrees, at HOA's expense, to reinstate its status as an active Oregon business corporation.

7.2  A&T agrees, at HOA's expense and with counsel selected by the HOA, to promptly file and to diligently pursue to completion, an action against Capitol for breach of contract, breach of its covenants to defend and to indemnify, and any other claim available to A&T arising from Capitol's failure to defend, settle and indemnify A&T in the Lawsuit.

7.3  A&T grants HOA a security interest in any recovery that A&T obtains from Capitol by way of judgment or settlement, up to the amount of the unsatisfied portion of the Stipulated Judgment in the Lawsuit, plus accrued interest thereon and any attorney fees and costs that may be awarded to A&T.  Any sums recovered by A&T from Capitol in excess of such amount shall be the sole property of A&T.

7.4 A&T agrees to pursue such action against Capitol to a final resolution, including appeals, unless released from such obligation by HOA.  A&T agrees that the HOA shall have sole authority to approve or reject any offers of compromise.  Funds received by A&T in settlement of by judgment shall be made payable to Byrne & Associates IOLTA Oregon Trust Account.

7.5 HOA will provide a full satisfaction of judgment to A&T upon payment of any proceeds from Capitol.

(Hickman Decl. Ex. 9 at 2-3.)

Pursuant to the terms of the Addendum, A&T filed this action in the Circuit Court of the State of Oregon for the County of Multnomah, asserting claims for breach of fiduciary duty based on Capitol's failure to defend and for breach of contract based on both Capitol's failure to defend and failure to indemnify seeking to recover the $1.1 million remaining due under the Judgment. Capitol removed the action to this court.  A&T has since moved to amend the complaint to add allegations that A&T incurred legal defense expenses of $3,237 in connection with the First Action, and a claim for punitive damages based on allegations that Capitol's denial of coverage and refusal to defend was wanton, flagrant, and reckless.

Both parties have moved for summary judgment based on Capitol's affirmative defenses of claim and issue preclusion.  A&T also seeks summary judgment on Capitol's affirmative defenses of another action pending, standing, and real party in interest.  In considering the pending motions for summary judgment, the parties have agreed that the court should consider the proposed amended complaint, and the allegations contained therein, as the operative complaint in this action.

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.

56(a) (2010).  Summary judgment is not proper if material factual issues exist for trial.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Id.* at 324.  A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements.  *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).  Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party.  *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982).  All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.  *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).  Where different ultimate inferences may be drawn, summary judgment is inappropriate.  *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits.  A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence.  FED. R. CIV. P. 56(c) (2010).  The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

Both parties move for at least partial summary judgment at this time. Capitol moves for summary judgment on the Association's claims arguing that they are barred by the doctrine of claim preclusion, or *res judicata*. Alternatively, Capitol argues that the court is limited by the doctrine of issue preclusion to considering the effect of the Addendum and that because the Policy covers only property damages caused by a occurrence and grounded in tort, A&T's contractual obligation to the Association created by the Addendum is excluded under the terms of the Policy. The Association seeks dismissal of Capitol's affirmative defenses of claim preclusion and issue preclusion, the subject of Capitol's motion for summary judgment, as well as the affirmative defenses of another action pending, standing, and real party in interest.

I.  Capitol's Summary Judgment Motion

A&T concedes that Judge Chamberlain's finding that A&T is not entitled to indemnification from Capitol for its portion of the Judgment in light of the Association's release of A&T as set forth in the Agreement bars relitigation of Capitol's obligation to indemnify A&T based on the facts then before Judge Chamberlain. However, A&T argues that Capitol's obligation to indemnify A&T in light of the Addendum, which amended the Association's release of A&T and was not in existence at the time of Judge Chamberlain's decision, is properly before this court. Additionally, A&T asserts that its claims for defense costs and punitive damages based on Capitol's refusal to defend A&T in the First Action was not addressed by Judge Chamberlain in the garnishment proceeding.

   A.  *Indemnification Claim Based on Addendum*

      1.  Claim Preclusion

The doctrine of *res judicata*, or claim preclusion, generally prohibits a party from relitigating

the same claims that were raised or could have been raised in a prior action.  *Western Radio Servs.*

*Co., Inc. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).  When the prior action was litigated in

state court resulting in a state-court judgment, federal courts must apply the preclusion law of the

state in which the judgment as rendered.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75,

81 (1984); *Valley Wood Preserving, Inc., v. Paul*, 785 F.2d 751, 753 (9th Cir. 1986).  The Oregon

courts follow a well-established general rule that:

> a plaintiff who has prosecuted one action against a defendant through to a final
> judgment binding on the parties is barred on *res judicata* grounds from prosecuting
> another action against the same defendant where the claim in the second action is one
> which is based on the same factual transaction that was at issue in the first, seeks a
> remedy additional or alternative to the one sought earlier, and is of such a nature as
> could have been joined in the first action.

*Rennie v. Freeway Transp.*, 294 Or. 319, 323 (1982).  In *Bloomfield v. Weakland*, 339 Or. 504, 510-

11 (2005), the court explained that the "rule forecloses a party that has litigated a claim against

another from further litigation on that same claim on any ground or theory of relief that the party

could have litigated in the first instance."  A claim or cause of action is comprised of an aggregate

of operative facts which give rise to a right or rights which can be enforced in a single judicial

proceeding.  *Dean v. Exotic Veneers, Inc.*, 271 Or. 188, 192-94 (1975); *Troutman v. Erlandson*, 287

Or. 187, 201-02 (1979).  "To prevent splitting of the dispute or controversy, courts employ a broad

definition of what could have been litigated.  Claim preclusion conclusiveness between the parties

applies 'with respect to all or any part of the transaction, or series of connected transactions,' out of

which the action or proceeding arose." *Drews. v. EBI Companies*, 310 Or. 134, 141 (1990)(quoting Restatement (Second) of Judgments § 24(1) (1982).  For *res judicata* to apply, the litigant must have had a "full and fair opportunity" to litigate the issue in the earlier case.  *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480-81 ( 1982).

The Addendum, which is admittedly an effort by A&T and the Association to correct an unintentional drafting error in the Agreement, was not signed until after the Judgment was entered. While the Addendum arises from, and is related to, the same factual transaction considered by Judge Chamberlain in the First Action, the Addendum, and its effect on the parties' liabilities, was not before, and was not considered by, Judge Chamberlain.  The Addendum was not in existence during the pendency of the First Action.  Therefore, A&T could not have asserted a claim based on the Addendum in the First Action.  A&T did not have a full and fair opportunity to litigate the effect of the Addendum in the earlier case.  *See Soren-Hodges v. Blazer Homes Inc.*, 204 Or. App. 86, 94 (2006)("[C]laim preclusion cannot apply if the party asserting a second claim lacked actual or constructive knowledge of its availability when the party asserted the first claim.  It that situation, that party cannot be said to have had the 'opportunity to litigate' the first claim.").  Accordingly, *res judicata* does not apply to the question of what effect, if any, the Addendum has on Capitol's obligation to indemnify A&T.

2. Issue Preclusion

Collateral estoppel, or issue preclusion, arises when an issue of ultimate fact has been determined in a prior proceeding.  *Nelson v. Emerald People's Utility Dist.*, 318 Or. 99, 103 (1994). In *Nelson*, the Oregon Supreme Court set forth a five-part test which provides that:

If one tribunal has decided an issue, the decision on that issue may preclude

relitigation of the issue in another proceeding if five requirements are met:

1.  The issue in the two proceedings is identical.

2.  The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

3.  The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

4.  The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

5.  The prior proceeding was the type of proceeding to which this court will give preclusive effect.

*Id*. at 104 (citations and footnote omitted).

Again, while the issue before the court in both actions is Capitol's obligation to indemnify A&T for a portion of the Judgment, Judge Chamberlain considered this issue in light of only the Agreement, not the Addendum.  The effect of the Addendum was not litigated, it was not relevant to Judge Chamberlain's decision, and A&T did not have a full and fair opportunity to be heard on that issue.   A&T is not barred by collateral estoppel from litigating the effect of the Addendum on Capitol's obligation to indemnify A&T.

### 3.  Capitol's Obligation Under the Addendum

Capitol argues that even if the effect of the Addendum on its obligation to indemnify A&T is not barred by either claim or issue preclusion and is properly before this court, the obligation created by the Addendum sounds in contract and is not a loss covered by the terms of the Policy. Specifically, Capitol asserts that the obligation created by the Addendum does not qualify as "property damage" caused by an "occurrence" as defined in the Policy or is excluded under the Policy as a contractual obligation. A&T asserts that the Addendum revives the original tort liability

flowing from A&T to the Association and is, therefore, a covered claim.

The Policy provides that Capitol "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Hickman Decl. Ex. 2 at 71.) The Policy applies only where the "bodily injury" or "property damage" is caused by an "occurrence". (Hickman Decl. Ex. 2 at 71.) "Property damage" is defined as:

> a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> b.     Loss of used of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

while "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Hickman Decl. Ex. 2 at 43-44.) The Policy contains a number of exclusions, one of which Capitol argues is relevant to this matter. Exclusion b, entitled "Contractual Liability" excludes coverage for:

> "[b]odily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusions does not apply to liability for damages:

> (1) That the insured would have in the absence of the contract or agreement; or

> (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

(Hickman Decl. Ex. 2 at 31.)

To determine whether the award or judgment entered against the insured is covered by the insurance policy, a court sitting in diversity must interpret the language of that policy under law of

the forum state. *Home Indem. Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075, 1090 n.4 (D. Or. 2001). Under Oregon law, the interpretation of plain and unambiguous contract provisions is a question of law for the court. *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (1992). However, if the language in the contact is ambiguous, evidence may be admitted to show meaning and the question becomes one of fact. *Libby Creek Lodging, Inc. v. Johnson*, 225 Or. 336, 338 (1960).

Construction of insurance contracts requires ascertaining the parties' intent. *Mcleod v. Tecorp Int'l, Ltd.*, 318 Or. 208, 215 (1993). In doing so, the terms of the contract are presumed to have been incorporated and used in their primary and general meaning. OR. REV. STAT. § 42.250. The insurer has the burden of drafting insurance policies that are clear and unambiguous. *North Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 29 (2001). Therefore, any ambiguity in an insurance policy should be strictly construed against the insurer. *Hoffman*, 313 Or. at 470.

The insured has the burden of establishing that the assessed damages qualify as a covered loss under the terms of the policy. *ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.*, 349 Or 117, 127 (2010). Once the insured has met this burden, the burden shifts to the insurer to show that the loss falls within the asserted exclusionary clause. *Id. See also, Employers Ins. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 509 (2007).

A&T has the burden of establishing that the obligation created by the Addendum qualifies as "property damage" caused by an "occurrence." The definition of "property damage" found in the Policy requires physical injury to tangible property or the loss of use of tangible property. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "accident" is not defined in the Policy. While

interpreting the term differently in various contexts, Oregon courts have consistently recognized that the term "'accident has a tortious connotation' and exists only when damage results, in some sense, from a tort . . . ."  *Oak Crest Constr. Co. v. Austin Mut. Ins. Co.*, 329 Or. 620, 627 (2000)(citing *Kisle Fire v. St. Paul & Marine Ins.*, 262 Or. 1, 7 (1972)).

The Agreement clearly released A&T from any liability for damage to the Project caused by A&T's provision and installation of defective siding.  On April 15, 2010, Judge Chamberlain determined that, in light of the Agreement and release of A&T, Capitol had no obligation to indemnify A&T or contribute to the Association's damages.  Subsequently, A&T knowingly and willingly executed the Addendum and agreed to assume liability for its portion of the Association's damages and to pursue its rights under the Policy on behalf of the Association.  The execution of the Addendum created a new contractual obligation running from A&T to the Association.  The intentional assumption of a liability created through a contract does not result in physical injury or loss of use of property damage and is not tortious in nature.  A&T refers to the Addendum as a "rescission" of the Agreement and argues that the Addendum merely returned the parties to their position before the Agreement was executed with regard to A&T's liability for damages.  However, this does not alter the finding that the Addendum is a contract and that any obligations resulting therefrom are contractual, not tortious, in nature.  A&T's liability to the Association created by the Addendum is not "property damage" caused by an "occurrence" and A&T has not met its burden of proving that its obligation to the Association created by the Addendum is covered loss under the terms of the Policy.

Even assuming that the Addendum did result in a covered loss, A&T has established that it falls within the express exclusion for contractual obligations.  A&T is obligated to pay for the

property damage caused by the provision and installation of defective siding only because it assumed liability for the damage in the Addendum.  The Agreement released A&T of such liability forcing the finding that A&T was not liable for the damages in the absence of the Addendum.  Subsequently, A&T executed the Addendum in which it agreed to assume liability for property damage that occurred prior to the execution of the Addendum.  A&T's liability to the Association clearly falls within the parameters of the contractual liability exclusion present in the Policy.

Finally, the court will not enforce an agreement entered into by parties the express intent of which is to circumvent the finality of a valid court order, and resulting judgment, that barred the claim now sought to be asserted.  Allowing parties to avoid the consequences of a court order through subsequent contract, especially where such contract directly effects the rights of a third party, at least undermines, and likely moots, the general finality of court actions.  *Res judicata* would have no meaning otherwise, and litigation would be unending in any given case if one or more parties to a lawsuit were allowed to create new facts to support new or previously asserted claims.

Accordingly, the court concludes that the Addendum does not create an obligation to indemnify.

### B.  Duty to Defend Claim

A&T argues that while it asserted claims based on both a duty to indemnify and a duty to defend, Judge Chamberlain addressed only the duty to indemnify claim in his letter opinion and that in the absence of a ruling on the duty to defend claim, such claim is not barred by either claim or issue preclusion.  Capitol contends that Judge Chamberlain's dismissal of the action is an implied rejection of the duty to defend claim and that this court must give full effect to his ruling.

1.  Claim Preclusion

In its amended garnishor's allegations, the Association asserted that Capitol was liable for the unsatisfied portion of the judgment against A&T based on its refusal to defend and indemnify A&T.  Capitol sought summary judgment on and dismissal of both claims.  At oral argument, the parties concentrated primarily on the effect of *Stubblefield* on the indemnity claim and only briefly discussed the duty to defend claim.  The Association specifically represented that it was attempting to execute on the Judgment in the garnishment proceeding and was not suing for defense costs.  It then acknowledged that the majority opinion in *Northwest Pump* held that a breach of the duty to defend did not create an obligation to indemnify but indicated that it hoped the appellate courts would reconsider and find that the dissent was the proper holding.  Capitol acknowledged that the Association did not allege a duty to defend claim to recover defense costs and did not seek those costs in the garnishment proceeding.  Judge Chamberlain granted the motion for summary judgment on the indemnity claim and found that such ruling was dispositive of both claims.  Based on these facts, it is clear that the duty to defend claim was alleged, argued, and addressed solely as support for the indemnification claim and Capitol's payment of A&T's share of the Judgment, not as a claim to recover defense costs incurred by A&T as a result of Capitol's refusal to defend A&T in the First Action.  Therefore, to the extent A&T's duty to defend claim is asserted as support for its indemnification claim, this issue was raised and decided by Judge Chamberlain in the First Action and A&T is barred from asserting that claim again here.  The court must now consider what effect, if any, the First Action has on  A&T's claim for defense costs based on Capitol's alleged breach of the duty to defend.

### a. Same Factual Transaction

A&T's claim for defense costs is based on Capitol's refusal to defend it in the First Action. Capitol's involvement in the First Action was an issue presented to Judge Chamberlain in the garnishment proceeding. In light of the expanding view of Oregon courts on what constitutes a cause of action or a set of operative facts in the context of *res judicata* or claim preclusion, this court finds that A&T's claim for defense costs is based on the same factual transaction as that considered by Judge Chamberlain.

A&T argues that its duty to defend claim is not barred by Judge Chamberlain's ruling because "[t]he issue of Capitol's duty to *defend* A&T certainly was not litigated in the garnishment proceeding, nor was it essential to the court's decision." A&T asserts that Judge Chamberlain's reliance on *Stubblefield*, which addresses only assignments of claims for indemnification and does not apply to claims for failure to defend, makes it clear that Capitol's duty to defend was not at issue in the garnishment proceeding. The requirement that an issue be actually litigated and essential to a prior decision is an element of issue preclusion, not claim preclusion. *See Drews*, 310 Or. at 140 ("Claim preclusion does not require actual litigation of an issue of fact or law, as does issue preclusion. Nor does it require that the determination of the issue be essential to the final or end result reached in the action, claim or proceeding.") Therefore, A&T's argument is not relevant to the question of whether the duty to defend claim is barred by claim preclusion.

### b. Additional or Alternative Remedy

A claim is precluded in a second proceeding if it was available to the plaintiff in the first proceeding, even if the plaintiff did not assert the claim in the first proceeding. *Rennie*, 294 Or. at 921-22. Oregon courts "employ a broad definition of what could have been litigated" when

determining whether the doctrine of res judicata bars the litigation of a claim in a second proceeding. *Drews*, 310 Or. at 141. A&T asserts that the Association was limited to recovery of the amount of the Judgment in the garnishment proceeding and that a claim for A&T's defense costs could not have been joined in that action.

A&T now asserts a duty to defend claim to recover $2,237 paid to attorney Gary Rueter, hired by A&T to represent it in the First Action. It appears, and there is no dispute, that these defense costs accrued prior to the entry of the Judgment and initiation of the garnishment proceedings. Furthermore, A&T specifically assigned to the Association any and all claims arising out of or related to the Policy, including claims related to Capitol's obligation to defend A&T. Based on these facts, it is clear that the Association had a viable claim for defense costs at the time the garnishment proceeding was filed. The question then becomes whether the Association could have legally asserted such claim in the garnishment proceeding.

"Garnishment is a purely statutory proceeding." *Pringle v. Robertson*, 258 Or. 389, 390 (1971). Accordingly, the ability of the Association to assert a claim for defense costs in the garnishment proceeding is governed by the applicable statutes. Debts subject to garnishment in Oregon include a registered or docketed judgment, a civil claim if the writ is issued pursuant to provisional process, a support arrearage shown on support records, or a monetary obligation imposed under a recorded agency order or warrant. OR. REV. STAT. 18.605. Garnishable property includes "all personal property of the debtor, including but not limited to, property in safe deposit boxes, stocks wages, monetary obligations owing the debtor that are then in existence whether due or to become due, property held on expired and unexpired bailments and leases, and property held by the garnishee pursuant to a security interest granted by the debtor to the garnishee. OR. REV. STAT.

18.615.  A&T's claim for defense costs based on Capitol's breach of the duty to defend presents a factual issue that has not yet been considered or resolved by a court.  No judgment assessing the defense costs has been issued.  The Judgment at issue was limited to the two million dollars in property damage agreed upon by the parties in the Settlement, a portion of which has been paid by Zurich.  The Judgment did not include the $2,237 in attorney fees paid by A&T.  A&T's claim for defense costs has not been reduced to a monetary obligation owed by Capitol to A&T.  Accordingly, A&T's claim for defense costs is not garnishable property under the statute.  Similarly, in the absence of a judgment assessing defense costs, A&T's claim does not qualify as a debt subject to garnishment under the statute.

The Association, as A&T's assignee, could not have sought recovery of defense costs in the garnishment proceeding.  The claim was not available to the Association under the statutory framework for garnishment proceedings in Oregon.  A&T's current claim for defense costs based on a breach of Capitol's duty to defend is not barred by claim preclusion.

2.  Issue Preclusion

Capitol argues that even if A&T's claim for defense costs is not barred by claim preclusion, the question of Capitol's obligation to defend A&T in the First Action was at issue in the garnishment proceeding and is, therefore, barred by the doctrine of issue preclusion.  As previously noted, the issue of defense costs was not, and could not have been, asserted in the garnishment proceeding.  The duty to defend claim for defense costs was not litigated in the garnishment action, it was not relevant to Judge Chamberlain's decision, and A&T did not have a full and fair opportunity to be heard on that issue.  A&T is not barred by issue preclusion from pursuing its duty to defend claim in this action.

### C. Conclusion

A&T's claim for indemnification based on the Agreement is barred by claim preclusion. A&T's claim for indemnification based on the Addendum does not qualify as a protected loss under the Policy or, in the alternative, is excluded as a contractual liability. A&T's claim for defense costs and punitive damages based on Capitol's allegedly wrongful refusal to defend A&T in the First Action is not barred by either claim or issue preclusion. Accordingly, Capitol's motion for summary judgment is denied with regard to A&T's duty to defend claim and granted in all other respects.

## II.  A&T's Motion for Partial Summary Judgment

In light of the finding that A&T"s duty to defend, and related punitive damages claim, survive Capitol's motion for summary judgment, the court must now consider A&T's motion for summary judgment on Capitol's affirmative defenses of another action pending, standing, and real party in interest. The court will limit its consideration of these affirmative defense in light of the only remaining claim – A&T's claim for breach of the duty to defend.

### A. Another Action Pending

Capitol argues that this action is barred by the appeal of the garnishment proceeding in the First Action, which is currently pending in state court. Capitol relies on Oregon Rule of Civil Procedure 21(A)(3), which requires a commonality of both parties and cause in the actions at issue, and expresses concern that it is being sued for the same damages, based on the same facts, in two different forums. This court has found that A&T's claim for defense costs and punitive damages based on Capitol's allegedly wrongful refusal to defend A&T in the First Action was not at issue in the garnishment proceeding. Accordingly, A&T's claim based on Capitol's breach of the duty to defend is necessarily not at issue in the currently pending appeal.

The question of whether under the terms of the Policy Capitol had an obligation to defend A&T based on the allegations asserted in the First Action has not yet been addressed by any court and is not pending in the state courts. With the dismissal of all claims made and ruled on by Judge Chamberlain in the garnishment proceeding, and currently on appeal in the state courts, there is no commonality of cause of action, or claims, in the two proceedings. This action is not affected by the pendency of the appeal of Judge Chamberlain's ruling. A&T is entitled to summary judgment on Capitol's affirmative defense of another action pending.

### B. Standing

With regard to A&T's failure to defend claim, Capitol argues that A&T's evidence establishes that any defense costs incurred by A&T were for personal, not defense, counsel retained before Capitol withdrew its defense and are, therefore, not recoverable. Further, Capitol asserts that even if A&T is entitled to recover its defense costs, such recovery is for the benefit of the Association under the terms of the Addendum and A&T will not benefit from any recovery unless such recovery exceeds the balance of the Judgment.

In order to have standing under Article III of the Constitution, a plaintiff must satisfy a three-part test: (1) "the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (citations omitted).

"The party invoking jurisdiction bears the burden of establishing these elements." *Id.* at 561.

At the summary judgment stage, plaintiff may not rely on allegations in the complaint, but must "set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id*. (citations omitted). "[T]he allegations and supporting evidence are to be construed in favor of the . . . parties asserting standing." *Legal Aid Soc. of Alameda County v. Brennan*, 608 F.2d 1319, 1334 (9th Cir. 1979). "When a plaintiff has established the requisite causation, the court usually may infer that correction of the defendant's improper conduct will relieve the injury caused thereby." *Id*. at 1335.

Here, A&T alleges that it was injured by Capitol's failure to defend A&T in the First Action in that it became obligated to pay $3,327 in defense costs as a result of Capitol's conduct. These allegations are sufficient to establish the injury in fact required by *Lujan*, a finding not directly contested by Capitol. Capitol does argue that A&T is not able to establish that its refusal to defend was the cause in fact of A&T's defense costs, noting that A&T hired the "defense" attorney before Capitol advised A&T of its decision not to defend, and that a decision favorable to A&T will not redress A&T's injury as any recovery will be paid to the Association under the terms of the Addendum.

Capitol argues that A&T is unable to establish a causal relationship between the injury and Capitol's conduct because A&T retained Gary Rueter as personal, not defense, counsel and such retention was prior to any decision by Capitol to withdraw its defense. Capitol relies on A&T's concise statement of fact and Rueter's affidavit as support for these arguments.

Neither document identifies when A&T hired Rueter. The concise statement of fact provides only that "Rueter was retained as A&T's 'personal counsel.'" (Pl.'s Concise Statement ¶ 9.) Similarly, Rueter represents in his affidavit that he was retained to represent A&T in the First Action

but does not indicate the date on which he was initially retained by A&T.  Accordingly, Capitol's assertion that A&T hired Rueter after Captiol withdrew its defense is not supported by the record.

Capitol advised A&T that it was withdrawing from participation in the defense of the First Action by letter dated September 24, 2007.  Correspondence authored by Rueter establishes that he wrote to Capitol on October 3, 2007, to disagree with Capitol's refusal to defend A&T, and again on November 26, 2007, to ask Capitol to attend a mediation in the First Action scheduled three days later.  It is clear from the content of the letters that as of October 3, 2007, more than a week after Capitol advised A&T that it was withdrawing from the defense of the First Action, Rueter was acting on behalf of A&T with regard to First Action.  Viewing the facts in the light most favorable to A&T, it appears A&T has presented evidence that it incurred defense costs in response to Capitol's refusal to continue its defense of A&T in the First Action.

Capitol argues that A&T is also unable to establish that a favorable decision will provide redress for the alleged injury in that any recovery in this action will be paid over to the Association under the terms of the Addendum.  The Supreme Court recently rejected an identical argument in *Sprint Commc'ns Co., L.P. v. APCC Servs,. Inc.*, 554 U.S. 269, 286-87 (2008), in which the Court explained that:

> Petitioners next argue that the aggregators cannot satisfy the redressability requirement remit of standing because, if successful in this litigation, the aggregators will simply remit the litigation proceeds to the payphone operators.  But petitioners misconstrue the nature of our redressability inquiry.  That inquiry focuses, as it should, on whether the injury that a plaintiff alleges is likely to be redressed through the litigation – not on what the plaintiff ultimately intends to do with the money he recovers.

A finding that A&T is entitled to recover damages, either actual or punitive, for Capitol's failure to defend A&T in the First Action will redress the injury suffered by A&T as a result of Capitol's

wrongdoing. This is sufficient to meet the redressability requirement even if A&T is obligated to pay the sums recovered to the Association.

A&T has established it suffered an injury that was caused by Capitol's refusal to the defend A&T in the First Action which would be redressed by a favorable decision in this action. A&T has adequately proven that it has standing to bring this action and is entitled to summary judgment on Capitol's affirmative defense of lack of standing.

### C. Real Party in Interest

Every action filed in federal court must be prosecuted in the name of the real party in interest. FED. R. CIV. P. 17(a)(1)(2010). If the court determines that an action has not been initiated by the real party in interest, it must give the plaintiff a reasonable time for the real party in interest to ratify, join, or be substituted into the action before dismissing the case. FED. R. CIV. P. 17(a)(3)(2010). In a diversity action such as this, the court must look to the substantive law of the state of Oregon to determine the identity of the real party in interest. *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093-94 (9th Cir. 2004)(citing *Am. Triticale, Inc. v. Nytco Servs., Inc.*, 664 F.2d 1136, 1141 (9th Cir. 1981)(in diversity cases, federal courts must use state law to identify the underlying legal relationship between parties and the real party in interest).

Capitol contends that the Association, as the assignee of A&T's claim against Capitol, is the real party in interest in this action. However, at the time the complaint in this action was filed, the parties had entered into the Addendum, which served to withdraw the assignment to the Association of A&T's interest in any claims it had against Capitol. The Addendum granted the Association only a security interest in any recovery that A&T obtains against Capitol up to the amount of the unpaid portion of the Judgment, and obligated A&T to promptly file and diligently pursue such litigation.

The case relied on by Capitol in support of its argument that the Association is the real party in interest in this action applies only to the assignment of an action or a debt, not the grant of a security interest in a judgment from such action. *First Nat. Bank of Oregon v. Jack Mathis Gen. Contractor, Inc.*, 274 Or 315, 322 (1976)("The assignee of the debt has the exclusive right to recover upon it."). Furthermore, the question before the court in *Jack Mathis* was whether the assignee of monies due and owing the assignor from a third party was the real party in interest in an action filed to collect on a judgment obtained by the assignor against the third party after the assignment. The fact that the assignor in *Jack Mathis* was allowed to proceed to judgment against the third party despite the existence of the assignment is contrary to Capitol's assertion that the assignee was the only real party in interest in the action resulting in the judgment.

Capitol has not referenced, and the court is unable to find, any Oregon cases which hold that the grant of a security interest in the proceeds of litigation, without an assignment of the underlying action, affects the real party in interest in the underlying action. Accordingly, the court finds that A&T is the real party in interest in this action and is entitled to summary judgment on this affirmative defense.

### III.  A&T's Motion to Amend Complaint

A&T moves to amend the complaint to add allegations that A&T incurred legal defense expenses of $3,237 in connection with the First Action, and a claim for punitive damages based on allegations that Capitol's denial of coverage and refusal to defend was wanton, flagrant, and reckless. Capitol argues that summary judgment is appropriate on the allegations of the amended complaint, including the claims for defense costs and punitive damages, but argues, alternatively, that if A&T's claim for defense costs or punitive damages survives summary judgment, A&T is barred from

recovering these damages as a matter of law. Thus, Capitol opposes A&T's motion to amend as futile.

Once a defendant has filed a responsive pleading – as is the case here – a plaintiff may amend his "pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). Although the rule should be interpreted with "extreme liberality," *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981), leave to amend should not be granted automatically. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). A trial court may deny the motion if permitting amendment would prejudice the opposing party, produce an undue delay in litigation, result in futility for lack of merit, is sought by plaintiffs in bad faith or with a dilatory motive, or the plaintiffs have filed numerous amended complaints. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Prejudice to the opposing party carries the "greatest weight" in determining whether to deny leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Whether to grant leave to amend lies within the sound discretion of the trial court. *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). In exercising this discretion, however, the court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Id.*

Capitol contends that A&T's "defense costs" are not recoverable because they were paid to Rueter, who is identified as A&T's personal counsel. The court has already addressed this argument and found that the evidence presented by A&T establishes that Rueter provided services to A&T with regard to the First Action by writing letters to Capitol encouraging them to participate in the defense of the First Action and attend the mediation in the First Action. Both of these letters were

uniquely related to A&T's interests with regard to Capitol and not necessarily protected by Zurich's counsel.

Capitol then argues that because A&T is unable to state a viable claim for defense costs, A&T has nothing to support its claim for punitive damages. The court has found that A&T has stated a viable claim for defense costs and breach of a duty to defend theory. Consequently, A&T's claim for punitive damages is adequately supported by A&T's claim for defense costs alleged in the proposed amended complaint. A&T's motion to amend its complaint to add defense costs and punitive damages is not futile.

*Conclusion*

Capitol's motion (#18) for summary judgment is denied with regard to A&T's claim for defense costs and punitive damages based on Capitol's allegedly wrongful refusal to defend A&T and granted with regard to A&T's indemnification claims. A&T's motion (#21) for partial summary judgment is granted with regard to Capitol's affirmative defenses of another action pending, standing, and real party in interest. A&T's motion (#15) to amend is granted. A&T is directed to file the amended complaint with thirty (30) days of the date of this Opinion.

DATED this 17th day of August, 2011.


_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge