UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

A&T SIDING, INC., an Oregon Corporation

                Plaintiff,

        v.

CAPITOL SPECIALTY INSURANCE
CORPORATION,

                Defendant.

Case No.: 3:10-CV-980-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Opinion*

       Plaintiff A&T Siding, Inc. ("A&T"), filed this action to recover amounts it claims are due under a commercial general liability insurance policy ( the "Policy") issued by Capitol Specialty Insurance Corporation ("Capitol") for the benefit of the Brownstone Homes Condominiums Association (the "Association"). Capitol now moves to dismiss the action pursuant to the court's inherent authority, or, in the alternative, to strike or dismiss portions of A&T's First Amended

Page 1 - OPINION AND ORDER                                    {RMD}

Complaint ("Complaint"). For the reasons stated below, Capitol's motion to dismiss pursuant to the court's inherent authority is denied, its motion to strike selected portions is granted in part and denied in part, its motion to dismiss certain claims is granted in part, and the Complaint is dismissed for lack of subject-matter jurisdiction.

*Background*

I. Facts

General contractor Brownstone Homes, LLC ("Brownstone"), awarded A&T the contract to install siding on the Brownstone Forest Heights Condominiums in Portland, Oregon. *A& T Siding, Inc. v. Capitol Specialty Ins. Corp.*, No. 3:10–CV–980–AC, 2011 WL 3651777, at *1 (D. Or. Aug. 18. 2011). The Association soon became aware of construction defects resulting in damage, prompting it to file claims against Brownstone, who in turn filed third-party claims against several of its subcontractors (the "First Action"). *Id.* Included in those third-party actions were claims against A&T for installing defective siding. *Id.* Shortly thereafter, the Association asserted claims directly against A&T for negligent installation of siding, weatherproofing membranes, and flashing. *Id.* A&T tendered defense of the First Action to its insurers, Capitol and Zurich Insurance ("Zurich"). (First Am. Compl. ¶¶ 5-6.) Initially, both Zurich and Capitol participated in defending A&T, but Capitol withdrew representation on September 24, 2007, one day before the first settlement offer was tendered. (First Am. Compl. ¶¶ 5-6.) Capitol withdrew because it determined that the alleged defects and damage occurred prior to inception of the policy. (First Am. Compl. ¶¶ 5-6.)

The Association eventually entered into a settlement agreement (the "Agreement") with A&T whereby A&T denied any liability, but agreed to entry of a $2 million judgment to be paid to the

Association (the "Judgment"). *A&T Siding,* 2011 WL 3651777, at *1. The Association, in return, agreed to dismiss the claims it asserted against A&T and Zurich. *Id.* Further, the Association agreed it would not "execute upon or permit the execution of the stipulated judgment" against A&T or insurers who contributed to the Judgment. *Id.* Zurich paid $900,000 of the Judgment, and the parties believed that Capitol was liable for the remaining $1.1 million, but Capitol refused to contribute to the Judgment. *Id.* at *2.

Anticipating Capitol's refusal to contribute, the Agreement provided that A&T would assign to the Association, "any and all claims arising out of or related to [Capitol's] policies and claims practices relating to the defense, investigation and failure to settle the Lawsuit or contribute to settlement of the Lawsuit." *Id.* Further, A&T agreed to cooperate with the Association in its claims against Capitol by giving testimony as well as producing and executing documents. *Id.*

The Association filed a garnishment claim against Capitol, alleging that Capitol was liable for the remainder of the Judgment because it breached its duty to defend and duty to indemnify A&T. *Id.* Capitol moved for summary judgment, arguing that it was not liable for the remainder of the Judgment because the Policy provided payment only for sums that A&T had an obligation to pay. *Id.* Because A&T was released from payment by the Agreement not to execute on A&T's assets, the Judgment was not covered under the Policy. *Id.* Capitol relied on *Stubblefield v. St. Paul Fire and Marine Ins. Co.,* 267 Or. 397 (1973), which holds that covenants not to execute remove any obligation by the insured to pay a judgment, and the insurer is therefore released from covering that judgment. *A&T Siding,* 2011 WL 3651777, at *2. The Association argued that *Stubblefield* and its progeny were overruled by statute and were distinguishable from the case at hand. *Id.*

Pro Tem Multnomah County Circuit Court Judge Peter R. Chamberlain granted Capitol's

motion for summary judgment, rejecting the notion that *Stubblefield* had been statutorily overruled. *Id.* at *3. He further ruled that *Stubblefield* "clearly stands for the proposition" that an agreement not to execute releases the insurer from any obligation to reimburse the insured for any sum stipulated in a settlement or judgment because the insured himself has been relieved of liability.[1] *Id.*

Following the summary judgment motion, the Association and A&T signed an addendum to "more clearly express the intent" of the parties to the Agreement (the "Addendum"). *Id.* at *4. The Addendum maintains the Association's full release of Zurich, and imposes an obligation on A&T to pursue litigation against Capitol. *Id.* Further, the Association agreed not to execute against A&T's assets, but only until the completion of A&T's action against Capitol. *Id.*

Pursuant to the Addendum, A&T filed this suit against Capitol in state court, alleging that Capitol was in breach of its fiduciary duty, its to defend, and its duty to indemnify under the Policy. *Id.* A&T sought to recover the $1.1 million balance of the Judgment and reasonable attorney fees. (Compl. ¶¶ 12, 13, 15-17.) Capitol timely removed the action to the this court. *A&T Siding,* 2011 WL 3651777, at *4.

II. Procedural History

Both parties moved for summary judgment. Capitol argued that A&T was precluded from seeking the remaining balance of the Judgment based on *res judicata* and issue preclusion. *Id.* at *5. A&T sought dismissal of Capitol's affirmative defenses of claim and issue preclusion, another action pending, standing, and real party in interest. *Id.* Additionally, A&T moved to amend its complaint to add claims for attorney fees and punitive damages. *Id.*

---

[1] The Association appealed Judge Chamberlain's ruling and the garnishment proceedings are currently pending on appeal.

This court granted partial summary judgment in favor of Capitol, ruling that the Addendum did not create an obligation to indemnify. *Id.* at *10. Thus, A&T was precluded from asserting its duty to defend claim in support of its claim for indemnification, and reaffirmed Judge Chamberlain's ruling that A&T was not entitled to recover the $1.1 million balance of the Judgment. *Id.* However, the court denied Capitol's motion for summary judgment on A&T's prospective claims for attorney fees and punitive damages because those aspects of the duty to defend claims could not have been brought in the garnishment proceeding. *Id.* at *12.

This court also granted A&T's motion for partial summary judgment on three of Capitol's affirmative defenses. *Id.* at *17. First, the court found Capitol's defense of "another action pending" insufficient because the duty to defend claim was not implicated in the appeal of the garnishment action. *Id.* at *13. Second, the court determined that A&T had standing to sue under the requirements set down by the United States Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). *A&T Siding*, 2011 WL 3651777, at *15. Finally, the court held that A&T was a real party in interest because the Addendum withdrew the Association's interest in A&T's claims against Capitol. *Id.* at *15-16.

Following the court's opinion, A&T filed the Complaint, asserting claims of breach of fiduciary duty, breach of the duty to defend, and breach of the duty to indemnify. (First Am. Compl. ¶¶ 11-16.) Again, A&T sought the $1.1 million remaining on the balance of the Judgment, and added claims for $3,237 in attorney fees and $1 million in punitive damages. (First Am. Compl. ¶¶ 11-16.)

On September 2, 2011, both parties participated in a status conference, during which A&T sought permission to move for leave to file a second amended complaint. (Pl.'s Resp. at 7.) At that

conference, the court allowed A&T to file "a stipulated or opposed motion for leave to file a second amended complaint on or before 10/3/11." (Mins. Of Docket Entry 56, Sept. 2, 2011.) Pursuant to that order, A&T moved to amend its complaint, but later withdrew the motion before Capitol responded. (Pl.'s Notice of Withdrawal at 1.)

Capitol now moves to dismiss the Complaint in its entirety pursuant to the court's inherent authority. (Def.'s Mot. to Dismiss at 2.) In the alternative, Capitol asks court to strike or dismiss count two of the second claim for relief, all attempts to recover the $1.1 million stipulated balance of the Judgment, A&T's request for punitive damages, and A&T's request for attorney fees. (Def.'s Mot. to Dismiss at 2.)

### *Legal Standards*

#### I. Motion to Dismiss Pursuant to the Court's Inherent Authority

The court may impose the sanction of complete dismissal pursuant to its inherent authority in "extreme circumstances, in response to abusive litigation practices, and to insure the orderly administration of justice and the integrity of the court's orders." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988). Generally, this sanction is imposed when a party deceives the court or engages in "conduct utterly inconsistent with the orderly administration of justice." *Wyle v. J.R. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir.1983).

The court determines the applicability of the dismissal sanction by evaluating a five-factor test articulated in *Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337, 348 (9th Cir. 1995):

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

The court is not required to make explicit findings for each factor, but it must find "willfulness, fault, or bad faith" by the offending party in order to dismiss pursuant to its inherent authority. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). One instance of willfulness, fault, or bad faith, however, is insufficient to justify dismissal. *Halaco*, 843 F.2d at 380-81. Further, due process requires "that there exist a relationship between the sanctioned party's misconduct and the matters in controversy" in a way that could interfere with the court's proper decision of the case. *Anheuser-Busch*, 69 F.3d at 348.

Finally, the court must consider imposing lesser sanctions before dismissal. *Id.* Adequate consideration of lesser sanctions includes the following: (1) explicitly discussing the feasibility of less drastic sanctions and explaining why such sanctions would be inappropriate; (2) implementing alternative sanctions before ordering dismissal; and (3) warning the party of the possibility dismissal before ordering dismissal. *Id.*

## II.  Motion to Strike under FED. R. CIV. P 12(f)

The court may strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading. FED. R. CIV. P. 12(f). Matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Further, when ruling on a motion to strike, the court views the pleadings in the light most favorable to the non-moving party. *Computer Stores Nw., Inc. v. Dunwell Tech., Inc.,*No. CV–10–284–HZ, 2011 WL 2160931, at *4 (D. Or. May 31, 2011).

III. Motion to Dismiss under FED. R. CIV. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a) governs pleadings and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a). A motion to dismiss premised on Rule 12(b)(6) argues that the allegations in the complaint are insufficient to state a claim for relief. FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court emphasized the need to include sufficient facts in the pleading to give proper notice of the claim and its basis: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations and brackets omitted). Even so, the Court noted that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

On a motion to dismiss for failure to state a claim, the court must review the sufficiency of the complaint, *Scheuer,* 416 U.S. at 236, and assume the truth of all allegations of material fact, construing them in the light most favorable to the nonmoving party. *Am. Family Ass'n, Inc. v. City & Cnty. of S.F.,* 277 F.3d 1114, 1120 (9th Cir. 2002). The court's review is limited to the face of the complaint, any documents referenced in the complaint, and those matters of which the court may properly take judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Otherwise, as a general matter, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir. 2001).

*Discussion*

I. Motion to Dismiss Pursuant to the Court's Inherent Authority

Capitol moves to dismiss the entire Complaint pursuant to the court's inherent authority to manage its docket. Capitol claims that A&T willfully and in bad faith refused to comply with this court's order dismissing A&T's claims for breach of the duty to indemnify and for recovery of the Judgment. According to Capitol, A&T's bad faith is evidenced by: (1) failing to file a second amended complaint following the September 2, 2011, status conference despite having an obligation to do so; (2) obscuring key issues when responding to Capitol's motion for summary judgment by emphasizing the "defense costs" and subsequently returning to pursue its core issue of seeking indemnity; (3) A&T's willingness to argue one position to the state court and another position to this court depending on its short-term needs; and (4) continuing to argue the position that is entitled to recovery of the entire $1.1 million balance of the Judgment despite court orders declaring it cannot. This collection of bad faith acts, Capitol argues, are abusive litigation practices that entitle it to dismissal. Beyond alleging that these actions constitute bad faith, Capitol does not specify how application of the *Anheuser-Busch* test weighs in favor of dismissal.

In its response, A&T addresses only Capitol's first and third allegations of bad faith; that A&T failed to file a second amended complaint and argued different positions depending on their short-term needs. To the first charge of bad faith, A&T argues that it was never under a court order to file a new complaint, but only to file a motion for leave to file a new complaint, which it did. In response to Capitol's argument that it acted in bad faith by putting forth contradictory arguments in different courts, A&T argues that it was not a party to the garnishment proceeding before Judge Chamberlain and thus could not have argued contrary to the positions it has taken before this court.

{RMD}

A court may find that a party has acted in bad faith when that party has "knowingly or recklessly raise[d] a frivolous argument, or argue[d] a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir.1996). Bad faith can also be found where a party disrupts enforcement of a court order or disrupts litigation. *Primus Auto. Fin. Serv., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir. 1997). Because sanctions can deter future parties from pursuing colorable claims, this is a very high threshold to meet and "should be reserved for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Id.* at 649-50.

A&T's actions do not constitute the "extreme circumstances" required for the court to dismiss this case as a sanction. The docket entry from the September 2, 2011, meeting in which Capitol claims the court ordered A&T to file a new complaint reflect the following: "Plaintiff to file a stipulated or opposed motion for leave to file a second amended complaint on or before 10/3/11."(Mins. for Docket Entry 56, Sept. 2, 2011). The fact that the motion for leave to file was to be "stipulated or opposed" means that Capitol could have opposed the motion and the motion could have been denied. Contrast this language with language from the August 17, 2011, order in response to A&T's motion to amend in which the court ordered it to file "the amended complaint." The language in the docket entry does not reflect an obligation by A&T to file a new amended complaint. A&T was free to withdraw its motion for leave to amend and did not violate a court order when it did so. To the extent that Capitol argues for complete dismissal based on a purported violation of a court order directing A&T to amend its complaint in a certain way, that argument is misplaced and the court finds it unpersuasive.

Capitol cites no authority in support of its argument that emphasizing one claim on a summary judgment motion and subsequently emphasizing other claims on an amended complaint

shows bad faith. A&T put forth the arguments necessary to survive a motion for summary judgment, and later, filed an amended complaint to seek punitive damages and attorney fees. That bad faith is absent is also shown by A&T's withdrawal of its motion for leave to amend the Complaint. A&T puts forth several good faith arguments for why it may recover $1.1 million under the breach of fiduciary duty or breach of the duty to defend claims in its response. Although it proved to be incorrect, A&T believed that it would be able to recover damages under its two remaining claims. Any "obfuscation of the key issues" that A&T undertook did not constitute bad faith.

A&T also did not engage in bad faith by arguing different positions to different courts. By the terms of the Agreement, A&T assigned any and all claims arising out of or relating to the Policy to the Association. The plaintiff in the garnishment litigation who argued the duty to defend claim was the Association. A&T did not argue any position to the state court. Therefore, it could not have argued a contrary position before this court. Further, Judge Chamberlain did not address the duty to defend claim in his opinion, so there remained some uncertainty as to whether he had the authority to decide that claim.

A&T's attempts to recover the $1.1 million balance of the Judgment also do not rise to the level of bad faith. The court granted summary judgment for Capitol on A&T's claim for breach of duty to indemnify. In the Complaint, A&T is claiming that it is entitled to $1.1 million in damages as a result of Capitol's breach of fiduciary duty and duty to defend. As explained below, the court rejects those arguments, but they do not rise to the threshold of "knowingly or recklessly" frivolous.

*Anheuser-Busch* is a good example of an appropriate dismissal under the five-factor test. 69 F.3d at 348. There, the plaintiff filed a declaratory judgment against one of its distributors and its managers, Florence Beardslee, regarding a contract dispute. *Id.* at 340. The distributor filed a counterclaim, arguing that plaintiff breached the contract by unreasonably withholding approval of

the distributor's daughter as successor manager. *Id.* Before and during trial, Beardslee repeatedly violated a court imposed publicity order, withheld evidence that the court ordered her to produce, introduced evidence in violation of the court's *in limine* rulings, and lied to the court about whether she possessed certain evidence. *Id.* at 341, 346, 350. The district court ordered dismissal of the distributor's counterclaim pursuant to its inherent authority and the Ninth Circuit affirmed. *Id.* at 355. The court determined that Beardslee's actions were in bad faith and constituted "egregious misconduct." *Id.* at 348. Moreover, the court reasoned that less drastic sanctions would be ineffective because Beardslee's behavior "made it impossible for the district court to conduct another trial with any reasonable assurance that the truth would be available." *Id.* at 352.

In *Halaco Engineering Co. v. Costle*, 843 F.2d 376, 377 (9th Cir. 1988) the Ninth Circuit determined that the district court erred in dismissing a case pursuant to its inherent authority. There, the plaintiff sought declaratory relief against the Environmental Protection Agency ("EPA") challenging EPA's finding that plaintiff had been discharging pollutants into a wetland. *Id.* The district court dismissed a counterclaim asserted by the EPA and entered judgment for plaintiff because the EPA withheld portions of a discoverable document and prepared a "defamatory and injurious" report that was not supported by the facts. *Id.* at 378. The Ninth Circuit reversed on appeal, finding that: (1) EPA's fault was minimal; (2) the district court did not adequately consider lesser sanctions; (3) there was no nexus between the misconduct and the matters in controversy; and (4) the plaintiff was not prejudiced by EPA's actions. The circumstances, therefore, were not extreme enough to warrant the sanction of dismissal. *Id.* at 382.

Here, the factors set forth in *Halaco* and *Anheuser-Busch* weigh against dismissal. The public's interest in expeditious resolution of litigation weighs in favor of dismissal in order to prevent the relitigation of issues already decided by Judge Chamberlain and this court. But this

factor is not determinative, nor very persuasive considering the alternative avenues (like a 12(b)(6) motion) that serve this public interest. Capitol does not argue that they have been prejudiced in any way by any of the four alleged instances of bad faith. Therefore, this factor weighs against dismissal. Additionally, the public policy favoring disposition of cases on their merits heavily weighs against dismissal because disposing of a case via sanctions is not "on the merits." Finally, the availability of less drastic sanctions also weighs against dismissal. This court has not sanctioned A&T before and has not warned A&T of the possibility of dismissal. Further, this situation is unlike that in *Anheuser-Busch*, where a party's behavior has made it impossible to conduct a trial "with reasonable assurance that the truth will be available." *Anheuser-Busch*, 69 F.3d at 352.

Accordingly dismissal pursuant to the court's inherent authority is not warranted.

## II.  Capitol's motion to strike

### A.  Duty to Indemnify

Capitol asks the court to strike the second count of A&T's second claim of relief. That count asserts that Capitol is in breach of its duty to indemnify. A&T agrees that this claim is contrary to this court's previous order granting summary judgment for Capitol on the duty to indemnify claim. (Pl.'s Resp. To Def.'s Mot. To Dismiss at 1 n. 1.) Accordingly, this count is stricken.

### B.  $1.1 million Balance of the Judgment.

Capitol moves to strike all references to, and claims for recovery of damages in the amount of $1.1 million. Capitol argues that the court has already decided that A&T cannot recover the balance of the Judgment. Insofar as A&T is seeking damages for its tort claim, Capitol argues that it cannot recover $1.1 million because it has not been harmed in that amount. Thus, all claims and attempts to recover that amount are immaterial and irrelevant to A&T's claims and should be stricken.

A&T advances two arguments to show it is entitled to recover the $1.1 balance of the Judgment. First, A&T claims that it is not seeking indemnification, but damages pursuant to its tort claim and duty to defend claim. Second, A&T asserts that under *Northwest Pump v. Am. States Ins. Co.,*141 Or. App. 210, *on reconsideration* 144 Or. App. 222 (1996), a plaintiff is entitled to recover the reasonable amount of a settlement regardless of whether or not that plaintiff is legally obligated to pay that settlement.[2]

The Ninth Circuit held in *Whittlestone Inc. v. Handi-Craft Co.,* 618 F.3d 970, 976 (2010), that "Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law." In *Whittlestone,* the district court granted a motion to strike a claim for lost profits and consequential damages in a breach of contract claim because provisions of the contract barred recovery of those damages. *Id.* at 972. The court of appeals reversed, noting that interpretation of the Federal Rules of Civil Procedure must begin with the rule's "plain meaning." *Id.* at 973. According to its plain meaning, a claim for damages "is not immaterial, because whether these damages are recoverable relates directly to the plaintiff's underlying claim for relief" and "is not impertinent, because whether these damages are recoverable pertains directly to the harm being alleged." *Id.* at 974. The Ninth Circuit also noted that 12(f) motions are evaluated on appeal under the abuse of discretion standard, whereas 12(b)(6) motions are reviewed *de novo,* and due process problems could arise from subjecting substantive decisions of first impression to different standards of review on appeal. *Id.* at 974.

A&T is seeking compensatory damages for the fiduciary duty and duty to defend claims. Black's Law Dictionary defines compensatory damages as those, "sufficient in amount to indemnify

---

[2]Plaintiff requests that, "given the apparent tension between *Northwest Pump* and *Stubblefield,*" the court certify the question of *Stubblefield's* applicability to a duty to defend claim to the Oregon Supreme Court pursuant to O.R.S. § 28-200 and D. Or. L.R. 83-15. The court declines to certify this question.

{RMD}

the injured person for the loss suffered." BLACK'S LAW DICTIONARY 445 (9th Ed. 2009). Further, the Oregon Supreme Court has found that "a plaintiff should recover only such sums as will be compensate a plaintiff for the injury suffered as a result of the defendant's wrong." *Yamaha Store of Bend, Inc. v. Yamaha Motor Corp.*, 310 Or. 33, 344 (1990), *modified on other grounds*, 311 Or. 88 (1991).

In his opinion, Judge Chamberlain clearly found that the covenant not to execute removed A&T's obligation to pay the balance of the Judgment. During the duration of the Agreement, therefore, A&T could not claim to have suffered a loss in the amount of the balance of the Judgment. The renewed obligation to pay the balance of the Judgment came about as a result of the Addendum to the Agreement. This renewed payment obligation and any harm suffered as a result derived from A&T's contract with the Association and not from Capitol's wrong. Therefore, A&T could not possibly have suffered a loss of $1.1 million as a result of Capitol's breach of fiduciary duty or breach of the duty to defend.

*Whittlestone* also does not prevent this court from striking all references to $1.1 million in damages. In *Whittlestone*, the court found that the claim for damages was not immaterial because the ability of the plaintiff to collect damages had not yet been decided and thus related directly to the claim for relief. This court has previously ruled that A&T may not recover the $1.1 million balance of the Judgment. Therefore, allegations of $1.1 million in harm are not directly related to the harm alleged and are immaterial to the underlying claims. Further, there are no due process concerns involved in striking the $1.1 million claim for damages. In *Whittlestone*, the court was concerned that striking the claim for damages would deprive the losing party of the *de novo* standard on appellate review that is applied to 12(b)(6) motions and motions for summary judgment. This court's determination that A&T could not recover the balance of the Judgment was in response to

{RMD}

a motion for summary judgment, which is subject to the same *de novo* standard on appeal as a 12(b)(6) motion to dismiss. *Red Lion Hotels Franchising, Inc. v. MAK, LLC*, 663 F.3d 1080, 1086 (9th Cir. 2011).

In *Northwest Pump*, the court determined that a plaintiff may recover the reasonable amount of settlement from the insurer for breach of the duty to defend. 141 Or. App. at 217. However, in *Northwest Pump* there was no covenant not to execute, and the insurer was liable for the underlying judgment. Without more, the reasoning in that case does not extend to a situation where, as here, the defendant is not liable for the balance of the judgment.

A&T argues that the holding in *Fireman's Fund Ins. Co. v. Sec. Nat. Ins. Co.* extends *Northwest Pump* to enable a plaintiff to recover the reasonable amount of settlement regardless of the defendant's liability for the judgment. 44 Fed. Appx. 161 (9th Cir. 2003). As an unpublished Ninth Circuit opinion handed down before 2007, *Fireman's Fund* holds no precedential value according to Ninth Circuit Rule 36-3. A&T argues that it is discussed in a footnote of a district court opinion in that case on remand and is therefore entitled to precedential value pursuant to the doctrine of "law of the case." The court finds A&T's arguments unpersuasive. The "law of the case" doctrine does not apply beyond the particular case in which the decision is rendered. Regardless, the reasoning applied *Fireman's Fund* does not apply here. First, the decision on appeal in *Fireman's Fund* dealt solely with the duty to indemnify. *Fireman's Fund,* 44 Fed. Appx. at 162. That duty is not at issue here, as the duty to indemnify claim has already been dismissed. Second, in *Fireman's Fund*, the defendant was liable to pay the reasonable settlement amount because to find otherwise would have required the plaintiff to prove its own negligence in order to recover. *Id.* The court determined that public policy in favor of encouraging settlement was contrary to the idea of making a party prove its own negligence. *Id.* at 163. That rationale does not apply here. The public

policy in favor of settlement does not extend so far as to allow A&T to recover damages that the court has previously decided it may not recover.

This court has previously ruled that A&T is barred from seeking the $1.1 million balance of the Judgment as a matter of law. As such, A&T's claim that it was damaged in the amount of $1.1 million is immaterial to the duty to defend claim and breach of fiduciary duty claim. Capitol's motion is granted and all references to and attempts to recover $1.1 million are stricken from the.

### C. Punitive Damages and Attorney Fees.

In light of the court's decision in *Whittlestone*, it is inappropriate to strike A&T's requests for punitive damages and attorney fees. Capitol argues that A&T's request for punitive damages is unsupported, immaterial, and impertinent, and should be stricken. Disagreements over coverage, Capitol contends, generally do not give rise to punitive damages. For the proposition that this court has the legal authority to strike punitive damages, it cites *Galvin v. Cook*, No. CV–00–29–ST, 2000 WL 1226342, *3 (D. Or. July 14, 2000), where the court struck a punitive damage claim against a municipality in a §1983 suit.

Unlike A&T's claim for the $1.1 million balance of the Judgment, there is no court order precluding A&T from seeking punitive damages and attorney fees. The due process concerns noted in *Whittlestone* could arise if substantive matters are decided in a motion to strike. In *Galvin* the court did strike a claim for punitive damages based on an explicit statutory provision that exempted municipalities from liability for punitive damages in §1983 actions. However, *Galvin* predates *Whittlestone* and was effectively overruled by that case. The court denies Capitol's motion to strike the prayer for punitive damages and attorney fees based on the clear mandate of *Whittlestone*.

Capitol alternatively asks the court treat its motions to strike as motions to dismiss insofar as they are mislabeled. Because of the impropriety of striking the punitive damages and attorney fees

allegations, the court will now treat Capitol's motion to strike the allegations as a motion to dismiss under Rule 12(b)(6).

III.  Motion to Dismiss under FED. R. CIV. P. 12(b)(6)

A.  *Punitive Damages*

Capitol requests that A&T's claim for punitive damages based on the breach of fiduciary duty claim be dismissed for failure to state a claim upon which relief can be granted.  Capitol claims that the events giving rise to this action were only a disagreement over the compensability of a claim, which courts do not recognize as the kind of "outrageous conduct" that entitles a plaintiff to punitive damages.  Further, Capitol argues that A&T has not alleged sufficient facts to support a claim for punitive damages, and that the court is not obliged to accept conclusory assertions as true.

Oregon law does not permit recovery of punitive damages in an action for breach of contract *Employers' Fire Ins. Co. v. Love It Ice Cream Co.,* 64 Or. App 784, 791 (1983), but punitive damages are recoverable against an insurer in a tort action if it engages in egregious or outrageous conduct.  *See Green v. State Farm Fire and Cas. Co.*, 667 F.2d 22, 24 (9th Cir. 1982).  In suits against insurers, disagreements over coverage generally do not rise to the level of outrageous conduct that would entitle a plaintiff to punitive damages.  *Allstate Ins. Co. V. Breeden*, No. CV. 01-1686-AS, 2007 WL 4480759, at *1 (D. Or. Dec. 17, 2007).  In fact, the Oregon appellate courts have determined that even a bad faith denial of coverage "sounds in contract and is not an actionable tort in Oregon." *Employers' Fire*, 64 Or. App. at 791.  Oregon courts have, however, upheld an award of punitive damages for failing to make reasonable efforts to settle when that failure amounts to outrageous conduct. *Goddard v. Farmers Ins. Co.,* 344 Or. 232, 260 (2008).

In the Complaint, A&T alleges that Capitol denied coverage based on reports of "damage" that preexisted the policy.  A&T claims that these reports do not exist and denying coverage based

on them was "outright deceit." According to A&T, this deceit goes beyond a simple "disagreement over coverage," and constitutes outrageous conduct that support its claim for punitive damages.

A&T asserts a claim for punitive damages under the tort claim of breach of fiduciary duty, claiming that Capitol's denial of coverage on the pretext of "damage" was "wanton, flagrant, and reckless." Even when the court takes A&T's allegations as true, Capitol's "deceit" amounts only to a bad faith refusal to pay policy benefits. The court in *Employers' Fire* clearly held that bad faith refusals to pay benefits sound in contract, and punitive damages are not recoverable in contract actions. A&T also asserts that Capitol showed "reckless and outrageous indifference to a highly unreasonable risk of harm." (First Am. Compl. ¶ 7.) As already stated, if this statement refers to Capitol's denial of coverage, it does not entitle A&T to punitive damages. Furthermore, to the extent that this refers to some other act, A&T has not alleged any facts to support this legal conclusion and thus has not met its pleading burden under *Twombly*.

A&T also argues that the court's ruling in *Goddard* supports its claim for punitive damages because Capitol's actions (outright deceit) were more outrageous and egregious than the actions of the defendant in *Goddard* (failing to put forth reasonable efforts to settle). *Goddard,* though is clearly distinguishable. The plaintiff in *Goddard* was suing an insurer under a theory of breach of the duty to settle, which courts recognize as a tort, and as explained, the claim of bad faith A&T alleges is one that sounds in contract. Also, in *Goddard*, the defendant acted as the insured's representative for the duration of the settlement discussions. Here, Capitol denied coverage and withdrew as A&T's representative shortly before settlement discussions had even begun.

Although asserted in conjunction with its breach of fiduciary duty claim, A&T's claim for punitive damages alleges a wrong that sounds in contract, and punitive damages are not recoverable in contract actions under Oregon law. Further, A&T does not carry its burden of pleading other

grounds for punitive damages. Therefore, A&T's claim for punitive damages is dismissed.

### B. Attorney Fees

Finally, Capitol asks the court to dismiss Plaintiff's claim for defense costs. Capitol alleges that the Policy was a "surplus lines policy" and is not subject to the provisions of Chapter 742 of the Oregon Code, including the attorney's fees provision as set forth in OR. REV. STAT. 742.061. Capitol offers what appears to be a copy of the Policy as evidence that it is, in fact, a "surplus lines policy," and aks the court to treat this motion to dismiss as a motion for partial summary judgment under FED. R. CIV. P. 56. A&T argues that this is not an issue that can be determined on a Rule 12 motion because the court generally may not consider material outside of the pleadings when ruling on a motion to dismiss.

In order for the court to treat a Rule 12 motion to dismiss as a Rule 56 motion for summary judgment, the court must affirmatively rule that it will not exclude extraneous materials from its consideration. *Swedberg v. Marotzke*, 339 F.3d 1139, 1146 (9th Cir. 2003). Upon conversion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).

In this case, discovery was delayed and has yet to occur. Without the advantage of discovery, it is unlikely that A&T has all pertinent material in its possession and would thus be unable to have a full and reasonable opportunity to present that material to the court. Therefore, the court must deny Capitol's request to treat this motion to dismiss as a motion for partial summary judgment and evaluate the motion based only on the pleadings.

"If settlement is not made within six months from the date proof of loss is filed with the insurer . . . and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action," the plaintiff is entitled to a reasonable amount of attorney's fees. OR. REV. STAT.

742.061. Surplus lines policies, however, are not covered by the provisions of Chapter 742 of the Oregon Statutory Code, including the attorney fee provision. OR. REV. STAT. 742.001.

In the Complaint, A&T alleges that "more than 6 months [have] elapsed since proof of loss was filed with Capitol." Further, as required by the statute, a claim has been brought upon the Policy. There is nothing on the face of the pleading that would suggest the surplus lines exclusion applies to A&T's claim for attorney fees. A&T has stated a sufficient claim for recovery of attorney fees pursuant to OR. REV. STAT. 742.061. Capitol's motion to dismiss the claim for attorney fees is denied.

## IV. Remand to State Court

Because the claims for $1.1 million and punitive damages have been dismissed or stricken, the amount in controversy requirement of 28 U.S.C. § 1332 is not met and the court lacks subject matter jurisdiction to decide this case. Throughout the life of a case, the court has a *sua sponte* obligation to evaluate whether it has subject matter jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). 28 U.S.C. § 1332(a) grants federal courts subject matter jurisdiction over claims between parties from different states, "where the matter in controversy exceeds the sum or value of $75,000." The court must dismiss a claim if it determines that, to a legal certainty, the amount in controversy does not exceed $75,000. *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.,* 802 F.2d 362, 363-64 (9th Cir. 1986).

This case was removed under diversity jurisdiction and is subject to the limits of §1332. The amount in controversy at the beginning of this case was upwards of $2 million. However, now that the claims for $1.1 million and $1 million in punitive damages have been dismissed, the only sum that A&T may recover is $3,237 in attorney fees. Because A&T is unable to recover more than $75,000 to a legal certainty, the court lacks subject matter jurisdiction to hear this case. The

Page 21 - OPINION AND ORDER                                        {RMD}

Complaint is, therefore, dismissed in its entirety.

## Conclusion

For the aforementioned reasons, Capitol's motion (Document 62) to dismiss pursuant to the court's inherent authority is DENIED, its motion to strike is GRANTED with regard to A&T's attempts to recover $1.1 million and DENIED in all other respects, its motion to dismiss is GRANTED in regard to A&T's claim for punitive damages and DENIED in all other respects, and the Complaint is DISMISSED for lack of subject matter jurisdiction.

DATED this _____ day of March, 2012.

_____
JOHN V. ACOSTA
United States Magistrate Judge